IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES ASSIGNED CALL NUMBERS **732-581-8548** and **843-214-7988** THAT IS STORED AT PREMISES CONTROLLED BY **VERIZON WIRELESS** | Magistrate No. 19-566m <br><br> **UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR SEARCH WARRANT

I, Chase A. Stephens, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for search warrants for information associated with certain cellular telephones assigned call number **732-581-8548** (hereinafter "**Target Telephone 1**") and call number **843-214-7988** (hereinafter "**Target Telephone 2**"), which information is stored at premises controlled by **VERIZON WIRELESS**, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **VERIZON WIRELESS** to disclose to the government copies of the information further described in Section I of Attachment B as to each telephone. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B as to each telephone.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been since June 2015. Prior to becoming an FBI Special Agent, Affiant was employed with the FBI as an evidence technician since February 2010. I am currently assigned to the Pittsburgh Field

Office and I am investigating the matters described below along with members of the Pennsylvania State Police Western Regional Auto Theft Task Force ("WRATTF"). As a Special Agent of the FBI, your Affiant received basic training at the FBI Academy located in Quantico, Virginia. Upon graduation, your Affiant was assigned to work white collar crime matters in the Pittsburgh Division. In this capacity, your Affiant was responsible for investigating possible violations of federal criminal laws, including Wire Fraud, Mail Fraud, and Money Laundering. Your Affiant is currently assigned to a Transnational Organized Crime Squad and is responsible for investigating possible violations of criminal laws, including Drug Trafficking and Interstate Transportation of Stolen Property. Through the course of my training and experience, your Affiant has become familiar with the methods and techniques associated with the investigations described above. Through the course of my training and experience, your Affiant has realized that cellular telephones are regularly used during the course of criminal activity by individuals in order to communicate, coordinate, or sometimes execute their criminal conduct. My training and experience as an FBI Special Agent has made me familiar with the types of data that can be obtained from cellular telephones, to include data stored on the device as well as data available from cellular service providers. Your Affiant has used data retrieved from cellular telephone extracts and data provided by cellular service providers to further several of his investigations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. Sections 371 (conspiracy) and 2312 (interstate transportation of stolen

motor vehicles) have been committed, are being committed, and will be committed by Herbert Lee White, Jr. (hereinafter "WHITE") and other persons not yet identified. There is also probable cause to search the information described in Attachment A as to these telephone numbers for evidence of these crimes as further described in Attachment B as to these telephone numbers.

**PROBABLE CAUSE**

5.  The FBI is working with WRATTF in the investigation and prosecution of crimes associated with the organized theft of vehicles, heavy equipment, landscaping equipment and all-terrain vehicles. The investigation concerns violations of 18 U.S.C. Sections 371 and 2312.

6.  The FBI and WRATTF are investigating two related thefts that occurred on 08/29/18 along Kuhl Road, Harborcreek Township, Erie County, PA. The thefts occurred at the A.R. Beatty Kubota dealership located at 5251 Kuhl Road, Erie, PA 16510, and at Fabin's Trailers and Truck Equipment located at 5324 Kuhl Road, Erie, PA 16510. The theft from A.R. Beatty involved four pieces of Kubota equipment, namely a 60" Kubota zero-turn mower, model ZD1211-60, serial #22529, a Kubota backhoe loader, model BX23SLB-R, serial #21275, a Kubota RTV utility vehicle, model RTV-X1120WL-A, serial #30094, and a Kubota RTV utility vehicle, model RTV-X1100CLR-A, serial #43650. These stolen items have a combined value of approximately $60,000.00. Additionally, the theft from Fabin's Trailers and Truck Equipment resulted in the loss of a 24-foot 2019 Continental Cargo enclosed trailer, VIN: 5NHUVHZ28KN088112, valued at $6,345.00.

7.  On 08/30/18, WRATTF members went to A.R. Beatty, Fabin's Trailer and Truck Equipment, and Meadowlark Structures located at 5250 Kuhl Road, Erie, PA 16510 to review

3

surveillance video of the incident. Meadowlark Structures sits between the two victim locations on the north side of Kuhl Road.

8. By reviewing surveillance video on scene and through continued investigation, investigators determined that the perpetrators arrived at the scene on 08/29/18 at approximately 0220 hours. At that time, a white pick-up truck arrived on scene followed by a dark pick-up truck towing a white enclosed trailer. The vehicles arrived from Kuhl Road, traveling west to east. The first pick-up truck can be described as a white in color, Ford F-250 SuperDuty extended cab pick-up truck with cab lights. The second pick-up truck can be described as a dark in color, Ford F-350 Crew Cab pick-up with dual rear axle wheels, marker lights on the rear fender flares, and cab lights. This truck was hauling a white in color, 28-foot ATC enclosed trailer with a flat nose, dual axle, and anodized aluminum front corners. Investigators also noted a discoloration to the passenger side man door of the trailer and aftermarket wheels.

9. The white Ford F-250 traveled past Fabin's Trailers and Truck Equipment, turned around on Kuhl Road, then parked at The Power of Precision business located at 5325 Kuhl Road, Erie, PA out of camera view. The dark Ford F-350 with the trailer turned onto the property of Meadowlark Structures and parked. The driver of this vehicle then placed an object covering the registration plate of the vehicle. The registration plate for this vehicle could not be determined prior to concealment. Two actors can then be seen on the lot of A.R. Beatty, stealing the equipment and driving the machines to a staging area near a Harborcreek Township pump station alongside Kuhl Road. An actor wearing dark clothing and a hood to hide his/her appearance then appeared in the driveway of Fabin's Trailers and Truck Equipment carrying a 2x4 piece of wood. The actor then approached a camera and knocked the camera out of position using the 2x4. This actor can then be observed on a different camera directing the white Ford F-

250 as it backed up and attached the stolen Continental Cargo trailer before leaving the lot. The two actors can then be seen riding the stolen Kubota machines along Kuhl Road and in the direction of the vehicles and trailers. Both trucks and trailers are then seen leaving the scene together at 0431hrs and entering onto I-90, heading eastbound from exit 32.

10. Investigators were able to track the actors' approach to the victim dealerships prior to the thefts by reviewing surveillance videos from numerous businesses and private property owners along a 92.5 mile route. Investigators observed videos that showed what appears to be the above described vehicles in the exact configuration of a white, Ford F-250 SuperDuty pick-up followed by a dark Ford F-350 pick-up towing a white enclosed trailer. By examining the videos, the investigators were able to identify a 92.5 mile segment of the actors' trip as they traveled toward the victim businesses prior to the thefts. That segment is from Brookville, Jefferson County to the victim businesses on Kuhl Road. The investigators were not able to find videos showing the subject vehicles anywhere prior to their appearance in videos in Brookville. Thus, the home location of the vehicles could not be determined from the videos alone. Their exact route of travel from Brookville to Kuhl Road, including mileage and corresponding time through their arrival at the victim locations on Kuhl Road, approximately 92.5 miles, was determined.

11. The video surveillance evidence described above indicates that the actors traveled a significant distance and specifically targeted the two victim businesses. The actors driving the two trucks obviously coordinated their efforts and worked in tandem to carry out the plan to steal the items described above and then make their getaway together.

12. Investigators requested and received license plate reading (LPR) camera data from the New York State Intelligence Center (NYSIC) for LPR cameras along Interstate 86

through New York that was possibly the route that the suspects fled after committing the thefts in Erie. Data, including photos of all captured license plates, was received from a fixed site LPR camera. The available data was reviewed based upon the time and distance from the victim dealerships in Erie, PA to known fixed LPR camera position. Investigators discovered a South Carolina trailer registration that initially appeared as BV66824, but after closer inspection, investigators found that the "B" had been noticeably altered and was in fact a "P." Further, the "8" was actually a "0" that had been altered by adding a horizontal line through the center. The South Carolina registration plate observed was PV66024, which belongs to WHITE.

13. In the experiences of investigators for WRATTF, in organized thefts with multiple actors, such as the thefts in the instant matter, the thieves typically communicate before, during and after the thefts, frequently by the use of cell phones.

14. On 10/09/18, investigators received a response from a Court Order submitted to Verizon Wireless on 10/05/18 pertaining to tower dumps at locations along the actors' known route of travel to A.R. Beatty's/Fabin's Trailer and Truck Accessories on 08/28/18 into 08/29/18.

15. The results from Verizon were received through a secure, password protected email and contained several file attachments. The information provided by Verizon included call details records for each cell tower covering the requested sites. Investigators noted one (1) cell phone number that had activity (calls) inbound and outbound that was captured by Verizon cell towers in four (4) of the known locations within the corresponding timeframe of travel, including the theft location. A cellular telephone number 843-708-2204, a Verizon network number, was captured with calls to and from cellular telephone 908-759-8889, which is serviced by Sprint. A total of seven (7) calls were made between these two (2) numbers between 2354 hours on 08/28/18 and 0218 hours on 08/29/18. None of these calls lasted longer than (4) minutes.

Additionally, the records show that there were no other calls made to or from 843-708-2204 other than those calls made with 908-759-8889.

16. Also of significance is the final call, which was an outbound call from 843-708-2204 to 908-759-8889 that occurred at 0218 hours on 08/29/18 with a 61 second duration. This call was placed three (3) minutes prior to the suspect vehicles arriving at the theft location.

17. Area code "843" serves the eastern third of South Carolina including the city of Charleston. Open source records indicate that cell phone number 843-708-2204 has no known registered owner.

18. Area code "908" serves the North and Central parts of New Jersey. Open source records indicate the cell phone number 908-759-8889 is registered to a Nataly Caban of 702 Summer Avenue, Newark, NJ 07104.

19. During the course of this investigation and through shared intelligence information between other law enforcement entities, including the Pennsylvania State Police Central and Eastern Regional Auto Theft Task Force Units, investigators learned of WHITE, DOB: 03/01/71, of 49 Pergola Avenue, Jamesburg, NJ 08831. WHITE has been arrested for similar such thefts dating back to 2006 and is a suspect in several more recent thefts across Pennsylvania, New Jersey, and Maryland. WHITE's legal residence for his driver's license and registered vehicles is 7815 Magellan Drive, North Charleston, SC 29420. A query through the SCDOT shows that WHITE has a black, 1999 Ford F-350 dually pick-up truck, SC registration 3897LP (previous SC registration of 2890HP, expired 10/31/17) registered to him along with several trailers. One being a 2009 trailer (generic) bearing SC registration PV66024.

20. As it pertains to this investigation, investigators believe that the 28-foot ATC enclosed trailer that the suspects used to facilitate the theft at A.R. Beatty's was stolen on

7

01/20/16 at approximately 2305 hours from a known location in Pennsylvania. South Whitehall Police, Lehigh County, report that surveillance video shows a white, Ford 250 pick-up truck with five (5) cab lights being used to steal the trailer. The white, Ford F-250 pick-up and stolen ATC trailer were then captured on video following a black, Ford F-350 pick-up truck to Best Line Equipment Leasing, also in South Whitehall Township. Five (5) pieces of Kubota equipment where then stolen from Best Line Equipment Leasing between the hours of 0122 hours and 0330 hours on 01/21/18. The white, F-250 pick-up truck and stolen trailer were captured by surveillance video on the lot at this time.

21. Additionally, two botched Kubota theft attempts resulted in WHITE and/or his black, Ford F-350 pick-up truck being identified by law enforcement and private citizens. Summaries regarding these two botched attempts are provided below:

  a. On 09/01/16 at 0135hrs, an attempted theft occurred at Antietam Tractor and Equipment in Hagerstown, Maryland where owner was alerted by GPS that pieces of his equipment were moving. The police were notified and responded to the scene to find a black, F-350 pick-up truck bearing SC registration 2890HP and a white, enclosed trailer bearing SC registration PV66024 parked nearby. Two pieces of Kubota equipment were found staged at the edge of the business property. An individual identified as WHITE approached the officers on scene about his truck and trailer. WHITE stated that he had been with a "backpage" girl all night was just returning to retrieve his vehicle. The officers allowed WHITE to drive away with his truck and trailer because the blue shorts and white t-shirt that he was wearing did not match the clothing of the suspect observed removing the machines in surveillance video.

  b. On 04/01/17 at 0010hrs, an attempted theft occurred at Pipersville Garden Center in Pipersville, Bucks County, PA. After the employees arrived later that morning, they observed ruts in the lawn adjoining the business, which caused them to review surveillance video from the night prior. The surveillance video showed black, F-350 pick-up truck and large, white enclosed trailer in the business's lawn. An actor, whose appearance is consistent with that of WHITE, is observed moving two (2) Kubota RTVs towards the front of the lot near the business entrance, but when the actor attempts to move his truck and trailer into position to pick-up the machines, he becomes stuck in the mud. Dunne's Towing was

contacted and was retained to extract the truck and trailer from the mud. A subsequent interview of Dunne Hagan, owner of Dunne's Towing, who's company extracted the vehicles from the mud, was conducted by Sergeant Brian Pfaff. Mr. Hagen advised that one his drivers, Hendricks Badenhorst, responded to the call to extract the vehicles. Mr. Badenhorst did not request any identification from the driver of the vehicles because he described the incident as a "simple winch out.". Mr. Hagan further stated that the phone number that was used to call Dunne's towing for the extraction was telephone number 843-603-0612. The driver for Dunne's Towing was suspicious of the circumstances and surreptitiously photographed the truck and trailer registration, which was SC registration 2890HP (truck) and SC registration PV66024 (trailer). Both of these registration plates belong to WHITE.

22. As demonstrated above, WHITE has shown a propensity for criminal activity and is not only a suspect in the thefts at A.R. Beatty and Fabin's Trailers and Truck Accessories, but has been active in stealing Kubota equipment and trailers since his release from prison in New Jersey on 09/16/15. Specifically, in addition to the incidents mentioned above, WHITE is suspected in numerous other thefts based on *modus operandi*, a vehicle consistent with WHITE's truck being observed during the theft, and/or statements made by those who have had stolen Kubota equipment seized from them.

23. As set forth above, WHITE has recently used cell phone 843-708-2204 (no registered subscriber) while committing these offenses. The investigation has revealed that WHITE has at least one other cell phone. Specifically, subscriber information obtained through open source records shows that **Target Telephone 1** is an active Verizon Wireless number registered to Herbert WHITE, 49 Pergola Avenue, Jamesburg, NJ 08831. Your affiant has reviewed text messages sent by WHITE from his 843-708-2204 phone in November of 2018. In those messages, WHITE instructs the recipients to contact him on Target Telephone 1.

25. **Target Telephone 2** is the second cell phone for which your Affiant hereby seeks historical cell tower site information. Based on your Affiant's review of call detail records

(CDRs) for WHITE's above-referenced cell phones, and for 908-759-8889 (which was apparently used by one of WHITE's coconspirators in the thefts in August of 2018 as described above), it appears that **Target Telephone 2** was used by WHITE during thefts that occurred in June of 2018. These thefts occurred at three locations during the late night hours of June 2, 2018 going into the early morning hours of June 3, 2018. The June 2-3 thefts involved the following:

- On June 2, 2018, a black Ford F-350 was stolen from Victory Auto Sales in Lewistown, PA during between the late evening hours of June 2, 2018 and the early morning hours of June 3, 2018. Your Affiant's investigation has located and identified that F-350 as the truck that WHITE used in the above-referenced thefts on August 29, 2018. Investigators have positively identified WHITE's truck (currently stored by WHITE at Storage World in Paulsboro, New Jersey) based on viewing the VIN on the truck at Storage World.

- During the late hours of June 2, 2018 into the early hours of June 3, 2018, there were additional thefts of two (2) enclosed trailers from Givler's Auto located in Leesport, PA (approximately 114 miles from the Victory Auto theft of the F-350). During the same time frame, there was a theft of two (2) Polaris RZR 1000XPs from Kermit Kistler's Polaris Dealership located in New Tripoli, PA, which is approximately 24 miles from Givler's Auto. The CDRs for telephone number 908-759-8889 put this telephone in the vicinity of all three of these dealerships from late 06/02/18 into early 06/03/18, communicating in approximately 32 activity sessions with **Target Telephone 2** and 908-759-8889 during the hours of 06/02/18 at 2351hrs to 06/03/18 at 0546 hours.

26.     The investigation of WHITE and his coconspirators is ongoing. The goal of this investigation is to determine the entire scope of the conspiracy and the identities of each of its members, and to then dismantle the conspiracy through the acquisition of evidence sufficient to establish guilt beyond a reasonable doubt for all of the crimes committed by all of its members. Unfortunately, the goal of the investigation has not yet been fully achieved. Notification of WHITE of the disclosure of records pertaining to the **Target Telephone 1** and **Target Telephone 2** would very likely cause WHITE and his coconspirators to, among other things, discard the telephones they are currently using and further fortify and conceal their criminal operations. In doing so, evidence is likely to be lost or never obtained, suspects may flee the jurisdiction, and the safety of informants and law enforcement officers may be imperiled.

27.     Based upon the foregoing, there is probable cause to conclude that the historical call detail records of **Target Telephone 1** and **Target Telephone 2**, and the physical location data of **Target Telephone 1** and **Target Telephone 2** constitute evidence of crimes committed in the Western District of Pennsylvania. The content of the records for **Target Telephone 1** and **Target Telephone 2**, by itself and/or in conjunction with complementary investigative steps, will assist in confirming that WHITE has committed these offenses and will be significant in the efforts to identify WHITE's coconspirators.

28.     In my training and experience, I have learned that **VERIZON WIRELESS** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic

areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

29. Based on my training and experience, I know that **VERIZON WIRELESS** can collect cell-site data about the targeted telephones. I also know that wireless providers such as **VERIZON WIRELESS** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30. Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon Wireless also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

31. Based on my training and experience, I know that wireless providers such as **VERIZON WIRELESS** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **VERIZON WIRELESS** typically collect and retain information

12

about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the target telephones' user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

32. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

33. I further request that the Court direct **VERIZON WIRELESS** to disclose to the government with respect to each telephone, any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrants will be served on **VERIZON WIRELESS**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrants at any time in the day or night.

34. I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents

because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully Submitted,

_____
Chase A. Stephens, SA, FBI

Subscribed and sworn to before
me on March 11, 2019

_____
LISA PUPO LENIHAN
UNITED STATES MAGISTRATE JUDGE

14